IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **MARTIN DEMATTEO,** | )<br>)<br>) |
| *Plaintiff*, | )<br>)<br>) |
| v. | )<br>)<br>) |
| **MANTECH INTERNATIONAL CORP.,**<br>2251 Corporate Park Dr.<br>Herndon, Virginia 20171, | )<br>) Civil No.: _____<br>)<br>) |
| *Serve Resident Agent*: | )<br>) |
| **C T CORPORATION SYSTEM,**<br>4701 Cox Rd. Ste. 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>) |
| and | )<br>) |
| **GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,**<br>3150 Fairview Park Dr.<br>Falls Church, VA, 22042, | )<br>)<br>)<br>)<br>) |
| *Serve Resident Agent*: | )<br>) |
| **C T CORPORATION SYSTEM,**<br>4701 Cox Rd. Ste. 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>) |
| *Defendants*. | )<br>) |

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY**

Plaintiff Martin DeMatteo brings this action against Defendants ManTech International Corporation ("ManTech") and General Dynamics Information Technology, Inc. ("GDIT") under § 827 of the 2021 National Defense Authorization Act, 10 U.S. Code § 4701 *et seq.* ("NDAA"), and the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA").

1

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the NDAA and the FCA.

2. This Court has personal jurisdiction over ManTech because it is headquartered in Herndon, Virginia, and conducts significant business in this judicial district.

3. This Court has personal jurisdiction over GDIT because it is headquartered in Falls Church, Virginia, and conducts significant business in this judicial district.

4. Venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants are headquartered and do significant business in this district.

5. Venue in this judicial district and division is also proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants have extensive and deliberate contacts in this judicial district.

**Parties**

6. Plaintiff Martin DeMatteo is a resident of Mainz, Germany and is a U.S. citizen.

7. Defendant ManTech is a Delaware corporation and is headquartered in Vienna, Virginia.

8. Defendant GDIT is a Virginia corporation and is headquartered in Falls Church, Virginia.

**Administrative Prerequisites**

9. Plaintiff has complied with all the administrative prerequisites necessary to bring this action.

10. Plaintiff timely filed a complaint with the Department of Defense Office of the Inspector General on July 29, 2023, and he received a decision from the agency head of the DOD on June 7, 2024, advising that it was closing his case.

## Factual Allegations

11. DeMatteo began working for ManTech in or around April of 2017. Specifically, ManTech employed DeMatteo as a DCGS-A Field Support Engineer to work on a government contract that ManTech had with the Department of Defense ("DOD").

12. In or around April of 2020, DeMatteo transferred from Korea to Germany. Specifically, ManTech employed DeMatteo as a Joint Automated Deep Operations Coordination System ("JADOCS") Senior Systems Engineer to work on the Enterprise Mission Information Technology Services ("EMITS") contract (formally known as the TMCC II contract) ManTech had as a subcontractor to GDIT with the United States Army Europe ("USAREUR") in the DOD.

13. In or around April 2020, Sheryl Walton, a ManTech program manager, contacted DeMatteo and advise him that his resume required edits in order to satisfy the German government's requirements under the US North Atlantic Treaty Organization's ("NATO") contract with GDIT and ManTech. Walton asked DeMatteo to misrepresent his experience on his resume and increase his years of technical experience.

14. DeMatteo understood that ManTech requested DeMatteo to lie on his resume to increase the amount ManTech could charge the US and German governments.

15. DeMatteo primarily reported to a GDIT manager for day-to-day tasking and responsibilities. GDIT was also responsible for approving DeMatteo's paid time off, doctor's notes, and sick leave before it was reviewed by ManTech. GDIT also performed daily check ins by calling DeMatteo's desk each morning and evening to ensure that DeMatteo was at his desk throughout the workday.

16. Beginning in or around April of 2020, this manager was James Yuhas, a GDIT

3

manager. In or around August of 2022, Yuhas was replaced with Richard Doddard, a GDIT manager.

17. On or around December 1, 2020, ManTech management requested DeMatteo and its other employees to sign an addendum that, in part, certified the amount of money ManTech was paying its employees. Around the same time, GDIT also requested its employees to sign similar addendums. DeMatteo noted that his addendum stated that he received $98,000 in salary when, in fact, ManTech only paid DeMatteo $95,000. ManTech and GDIT told DeMatteo and his coworkers that these addendums were requirements for continued employment and that they were intended to satisfy US and German government requirements.

18. DeMatteo understood that ManTech and GDIT requested the addendums to misrepresent the salaries of their employees to the US government in order to overbill the government.

19. Between 2020 and 2022, DeMatteo's GDIT supervisors would ask DeMatteo to perform work outside DeMatteo's statement of work on a regular basis.

20. In or around August of 2022, DeMatteo was involved in the interview process for ManTech employment candidate James Maina. DeMatteo determined that Maina had misrepresented his experience on his resume and did not have any of the technical experience or qualifications he had represented on his resume. Despite this, ManTech hired Maina in or around August of 2022.

21. DeMatteo's ManTech supervisor repeatedly asked him throughout the later part of 2022 to perform work which DeMatteo believed was outside the scope of his statement of work as presented to the United States government.

22. DeMatteo advised his supervisor on multiple occasions that working outside the

scope of his statement of work was outside the scope of the contract between ManTech, GDIT, and the United States government. DeMatteo reported that he was not trained or comfortable to work on the systems that ManTech was requesting DeMatteo to work on as a favor for the government.

23.  Throughout the later part of 2022, DeMatteo repeatedly requested his statement of work from his supervisor.

24.  On or around February 2 of 2023, Walton advised DeMatteo that his desk space was being relocated to a different building purportedly due to a request by the United States Army. Walton concurrently informed the United States Army that DeMatteo's desk would need to be moved unless the Army could provide DeMatteo with a permanent desk.

25.  On or about February 3 of 2023, Walton informed DeMatteo and the United States Army that he would be removed from a travel assignment to the Netherlands and replaced with Maina. However, the Army objected to this change because it considered Maina underqualified for his position. Walton then reassigned DeMatteo to the travel assignment alongside Maina at the Army's request.

26.  In or around February 5, 2023, to February 16 of 2023, DeMatteo confronted Maina regarding his qualifications and confirmed that ManTech had asked Maina to misrepresent his technical abilities and years of experience on his resume in order to qualify for his position on the EMITS contract.

27.  DeMatteo also spoke to a GDIT employee named Michael Bertram in or around February of 2023. Bertram confirmed that a GDIT manager James Yuhas contacted Bertram and advised him that his resume required edits in order to satisfy the German government's requirements under the US North Atlantic Treaty Organization's ("NATO") contract with GDIT

5

and ManTech. Yuhas asked Bertram to misrepresent his experience on his resume and increase his years of technical experience.

28. DeMatteo understood that GDIT requested Bertram to lie on his resume to increase the amount GDIT could charge the US and German governments.

29. On or around February 17, 2023, DeMatteo submitted a complaint to ManTech's human resources office reporting that ManTech and GDIT were engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government. DeMatteo also reported that he was asked to work outside of the scope of his contract with the United States government and requested his performance work statement.

30. In or around February of 2023, 'Richard Doddard, DeMatteo's GDIT manager, contacted DeMatteo to discuss his complaint to ManTech. Doddard advised DeMatteo that' GDIT could require DeMatteo to perform any work Doddard assigned DeMatteo.

31. In or around February of 2023, a few weeks following DeMatteo''s complaint to ManTech, ManTech issued to DeMatteo his performance work statement describing DeMatteo's duties and responsibilities under ManTech's contract with the United States Government.' Doddard was aware that DeMatteo received his performance work statement from ManTech.

32. On or about February 27 of 2023, ManTech assigned Brian Prather to be DeMatteo's supervisor. ManTech management placed Prather and DeMatteo's desks in close proximity to each other and instructed DeMatteo to advise Prather of his location at work at all times, to copy Prather on all of DeMatteo's emails, and to include Prather in all conversations between DeMatteo and United States government employees.

33. GDIT has three program managers on the EMITS contract. Brian Prather is

married to Kristin Prather, one of three GDIT program managers on the EMITS contract, and Prather regularly reported DeMatteo's whereabouts and actions to his spouse and the other two program managers.

34.     DeMatteo contemporaneously noted that his colleagues would not speak to him and avoided DeMatteo whenever ManTech or GDIT managers were in proximity, in contrast to the treatment he received from his colleagues prior to his February 17, 2023 complaint that ManTech and GDIT were engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government.

35.     On or around March 13 of 2023, DeMatteo submitted a new complaint to ManTech reiterating that ManTech and GDIT were engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government, and also reporting that ManTech and GDIT had retaliated against DeMatteo through Prather's heightened scrutiny of his activities and performance.

36.     On or around April 17 of 2023, ManTech and GDIT compelled DeMatteo to submit his resignation due to the isolation and heightened scrutiny he experienced after his February 17, 2023 complaint that ManTech and GDIT were engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government.

37.     On or around May 15, 2023, ManTech interfered with DeMatteo's ability to out-process with the United States government by falsely reporting that DeMatteo had refused to attend a meeting to out-process on May 1, 2023. DeMatteo was not informed of any meeting on

May 1, 2023.

38. On or around May 15, 2023, DeMatteo began contacting former colleagues and gathering documents in anticipation of filing a complaint with the Department of Defense Contractor Personnel Office ("DOCPER"), and, potentially, the Department of Defense Office of the Inspector General ("DOD OIG"). DeMatteo spoke to several former colleagues who were willing to disclose the fact that ManTech and GDIT managers had requested them to misrepresent their technical knowledge and experience on their applications and resumes.

39. On or around May 16, 2023, DeMatteo made a voluntary report to DOCPER reporting ManTech and GDIT's illegal activity relating to ManTech and GDIT requesting that applicants misrepresent their technical knowledge and experience on their applications and resumes and that ManTech and GDIT requested employees to sign false documentation to present to the United States and German governments.

40. On or around June 2, 2023, ManTech and GDIT sent emails instructing their employees to avoid contact with DeMatteo, DeMatteo's new company, and anyone associated with DeMatteo, and to not disclose any information, including salary information, to anyone outside of ManTech and GDIT.

41. DeMatteo has sustained economic damages and mental anguish as the result of GDIT's and ManTech's illegal actions, and he will continue to sustain damages into the foreseeable future.

**COUNT I**
**NDAA Retaliation**
**41 U.S.C. § 4701** *et seq.*

42. Plaintiff incorporates the allegations in the foregoing paragraphs as though alleged herein.

43. At all times relevant to this complaint, Plaintiff was an "employee of a contractor, subcontractor, grantee, or subgrantee" as defined under the NDAA, 41 U.S.C. § 4701(a)(1).

44. At all times relevant to this complaint, ManTech was a "contractor, subcontractor, grantee, or subgrantee or personal services contractor" as defined a under the NDAA, 41 U.S.C. § 4701(a)(1).

45. At all times relevant to this complaint, GDIT was a "contractor, subcontractor, grantee, or subgrantee or personal services contractor" as defined a under the NDAA, 41 U.S.C. § 4701(a)(1).

46. Plaintiff engaged in protected activity when he reported concerns about being asked to work outside the scope of his Statement of Work under ManTech's contract with the United States government, when he reported concerns about ManTech and GDIT asking their employees to mispresent their experience, and when he made his February 17, 2023 complaint that ManTech and GDIT were engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government.

47. Defendants retaliated against Plaintiff because of his protected activity when it changed the conditions of DeMatteo's employment by requiring him to inform Prather of his location at all times, requiring him to copy Prather on all of his emails, requiring him to include Prather in any conversation with the United States government personnel, and by isolating

DeMatteo by requesting others to not speak with DeMatteo and moving his desk to a different location.

48. Defendants retaliated against Plaintiff because of his protected activity when it constructively discharged DeMatteo by making DeMatteo's working conditions so intolerable that DeMatteo felt compelled to resign.

49. Defendants' stated reasons for terminating Plaintiff are pretextual.

50. For Defendants' unlawful retaliation against Plaintiff in violation of the NDAA, Plaintiff is entitled to such legal or equitable relief as will effectuate the purposes of the NDAA, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

## COUNT II
### False Claims Act Retaliation
### 31 U.S.C. § 3730(h)

51. Plaintiff incorporates the allegations in the foregoing paragraphs as though alleged herein.

52. At all times relevant to this complaint, Plaintiff was an "employee, contractor, or agent" as defined under the FCA, 31 U.S.C. § 3730(h).

53. Plaintiff reasonably believed that ManTech and GDIT intended to defraud the United States government by misrepresenting ManTech and GDIT employees' years of experience and technical knowledge by requesting the employees to lie about their experience on their resumes which were given to the United States and German governments through NATO.

54. Plaintiff reasonably believed that ManTech and GDIT intended to defraud the United States government by misrepresenting the salaries which ManTech and GDIT employees were being paid in order to overbill the United States government.

55. Plaintiff engaged in protected activity when he reported concerns about being asked to work outside the scope of his Statement of Work under ManTech's contract with the United States government, when he reported concerns about ManTech and GDIT asking their employees to artificially increase their experience, and when he made his February 17, 2023 complaint that ManTech and GDIT was engaging in illegal activity by requesting employment applicants to misrepresent their experience on their resumes and applications in order to defraud the United States government.

56. Defendants retaliated against Plaintiff because of his protected activity when they changed the conditions of DeMatteo's employment by requiring him to inform Prather of his location at all times, requiring him to copy Prather on all of his emails, requiring him to include Prather in any conversation with the United States government personnel, and by isolating DeMatteo by requesting others to not speak with DeMatteo.

57. Defendants retaliated against Plaintiff because of his protected activity when they constructively discharged DeMatteo by making DeMatteo's working conditions so intolerable that DeMatteo felt compelled to resign.

58. Defendants' stated reasons for terminating Plaintiff are pretextual.

59. For Defendants' unlawful retaliation against Plaintiff in violation of the FCA, Plaintiff is entitled to such legal or equitable relief as will effectuate the purposes of the FCA, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

**Prayer for Relief**

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment in his favor and award to him the following relief:

a.  Legal and equitable relief, including reinstatement;

b.  Economic, compensatory, and punitive damages;

c.  Liquidated damages;

d.  Attorney's fees and costs;

e.  Pre-judgment interest; and

f.  Any other relief that this Court deems just and equitable.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, Plaintiff demands a jury trial as to all issues so triable.

Respectfully submitted,

/s/ Nicholas Woodfield
Nicholas Woodfield, Esq.
VSB# 48938
R. Scott Oswald, Esq.
VSB# 41770
The Employment Law Group, P.C.
1717 K St NW, Ste 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com
soswald@employmentlawgroup.com